# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| KAREN S. SNEAD, | |
| Plaintiff, | 3:19-CV-00209 JWS |
| vs. | ORDER AND OPINION |
| GUADALUPE C. WRIGHT; TRANSAMERICA LIFE INSURANCE COMPANY; and MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, | [Re: Motions at Docs. 13, 34] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 13 Defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) moves the court to dismiss the complaint filed by Plaintiff Karen S. Snead (Plaintiff) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Transamerica Life Insurance Company (Transamerica) filed a joinder to the motion at docket 15. Plaintiff responds at docket 22. Merrill Lynch replies at docket 26 and Transamerica replies separately at docket 29. The court allowed Plaintiff to file a surreply, which is at docket 38. Plaintiff requests a hearing at docket 34, but the court concludes that a hearing would not be of assistance to the court.

## II. BACKGROUND

This lawsuit involves the assets of John H. Snead, who passed away shortly after midnight on August 7, 2017. In January of 2003, John Snead opened a life insurance

-1-

annuity policy—Number 400000571ML2—with Transamerica (Annuity Policy 571). At the time, Plaintiff was married to John Snead and was the named beneficiary. Plaintiff was divorced from John Snead on or about October 7, 2005. Sometime after the divorce and up to his death, John Snead had a long-term romantic relationship with Defendant Guadalupe Wright (Wright). The couple lived together in Alaska, and Wright worked for Merrill Lynch. On August 1, 2017, John Snead executed an annuity policy change form with a Merrill Lynch "Medallion Signature Guarantee" stamp on it naming Wright as the beneficiary of Annuity Policy 571. The form was allegedly submitted to Transamerica via facsimile in the afternoon of Friday, August 4, 2017, by Wright, but it was not processed until Monday August 7, 2017, during business hours, which would have been after John Snead's death. The complaint alleges misconduct on the part of Wright in connection with the beneficiary change.

Plaintiff filed her complaint on July 31, 2019. In the complaint she asserts nine causes of action against Defendants. Four counts are brought against Merrill Lynch: (1) Count 6 alleges that Merrill Lynch is vicariously liable for the negligent or wrongful actions of Wright in relation to the beneficiary change; (2) Count 7 alleges a breach of fiduciary duty in relation to Wright's actions; (3) Count 8 alleges negligent hiring, training, and/or supervision of employees, including Wright; and (4) Count 9 alleges that Merrill Lynch violated Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA), AS 45.50.471. Three counts are brought against Transamerica: (1) Count 4 alleges a breach of contract in relation to its handling of the beneficiary change; (2) Count 5 alleges a breach of fiduciary duty for its failure to investigate the circumstances of an attempted change of beneficiary so close to the time of John Snead's death; and (3) Count 9 alleges a violation of Alaska's UTPA.

Plaintiff asserts each of her claims based on her status as the purported beneficiary of Annuity Policy 571. Merrill Lynch and Transamerica argue that she ceased to be the beneficiary by operation of Alaska's revocation-by-divorce statute AS 13.12.804 when she finalized her divorce from John Snead in 2005 and,

consequently, has no basis for claims based on Wright's purported actions surrounding the beneficiary change.  In response, Plaintiff asserts that AS 13.12.804 does not apply because she is entitled to Annuity Policy 571 under the express terms of Paragraph 6 of her divorce settlement agreement with John Snead.  She provided a copy of that agreement in her response but with all account numbers fully redacted.  In reply, Defendants argue that the divorce agreement must be read in full and with knowledge of the various accounts addressed in the agreement to understand that it did not award Plaintiff Annuity Policy 571.  They filed a partially redacted copy of the divorce agreement to include identifying account information, as well as a related court document and a letter from Plaintiff to Merrill Lynch following the divorce.

### III.  STANDARD OF REVIEW

Defendants filed their motion to dismiss under Rule 12(b).  Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[1]  In deciding whether to dismiss a claim under this rule, the court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of undisputed matters of public record that are outside the pleadings.[2]  Furthermore, documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.[3]  If, however, "matters outside the pleadings are presented to and not excluded by the court, the motion must

---

[1] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[2] *See Gonzalez v. First Franklin Loan Services*, 2010 WL 144862, at *3 (E.D. Cal. Jan. 11, 2010) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001)); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[3] *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

be treated as one for summary judgment under Rule 56." In such a situation, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[4]

Here, both parties have presented documents related to the relevant divorce agreement. These documents are not part of the complaint, but given that all parties have had an opportunity to present pertinent materials and to be heard in regard to the additional evidence, the court will consider all materials and treat the motion as one for summary judgment.[5]

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]

---

[4]Fed. R. Civ. P. 12(d).

[5]Plaintiff filed a motion to strike or, alternatively, to file a surreply at docket 35. The court granted the motion in part at docket 36, allowing Plaintiff to file a surreply. Defendants subsequently filed oppositions to the motion, asserting that the court did not adequately address the request to strike. In granting the alternative request to file a surreply the court intended to deny the request to strike.

[6]Fed. R. Civ. P. 56(a).

[7]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8]*Id.*

[9]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[10] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[11] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[12] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[13] However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[14]

## IV. DISCUSSION

Plaintiff's complaint against Defendants is premised on her status as the original beneficiary under Annuity Policy 571 and on her position that she was never effectively removed as the beneficiary before John Snead's death. Defendants assert that regardless of the effectiveness of the beneficiary change, Plaintiff has no interest in Annuity Policy 571 because her status as beneficiary was revoked upon divorce from John Snead pursuant to AS 13.12.804. That statute provides, in relevant part, that the effect of a divorce on non-probate transfers is as follows:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between

---

[10] *Id.* at 323.

[11] *Id.* at 323-25.

[12] *Anderson,* 477 U.S. at 248-49.

[13] *Id.* at 255.

[14] *Id.* at 248-49.

> the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage
>
>> (1) revokes a revocable
>>
>>> (A) disposition or appointment of property made by a divorced individual to the divorced individual's former spouse in a governing instrument. . . . [15]

A governing instrument is defined as an "instrument executed by the divorced individual before the divorce or annulment of the divorced individual's marriage to the divorced individual's former spouse."[16] The disposition or appointment of property is defined to include "a transfer of an item or property or other benefit to a beneficiary designated in a governing instrument."[17] That is to say, AS 13.12.804 revokes any beneficiary designations to a former spouse upon divorce unless "the express terms" of some applicable agreement or court order provide otherwise.

        This court has previously concluded that the statute creates a rebuttable presumption and not a "strict and inflexible rule" so that the "fundamental goal of honoring the decedent's actual intention" can be achieved.[18] The effect of the statute can therefore be overridden by "proof . . . that the deceased actually intended to designate the otherwise revoked beneficiary in spite of the divorce."[19]

        Plaintiff argues that AS 13.12.804 "has no effect on [her] beneficiary status for [Annuity Policy 571]" because her court-approved divorce agreement with John Snead expressly awarded her "all retirement accounts," including the annuity.[20] Nothing in the

---

[15] AS 13.12.804(a)(1)(A).

[16] AS 13.12.804(j)(4).

[17] AS 13.12.804(j)(1).

[18] *State Farm Life Ins. Co. v. Davis*, No. 3:07-cv-00164, 2008 WL 2326323, at *4 (D. Alaska June 3, 2008).

[19] *Id.*

[20] Doc. 22 at p. 3.

divorce agreement specifically mentions Annuity Policy 571. Paragraph 6 of the agreement awards Plaintiff the value of the couple's retirement accounts:

> [Plaintiff] shall received the value of all retirement accounts which exist as of December 31, 2004 which includes Mr. Snead's personal Airland profit sharing account, IRA, Merrill Lunch with account numbers X8103, X1633, X1632 as well as the 401K Hartford account including any gains or losses on said value until such time as it is distributed to the [Plaintiff].[21]

The divorce agreement also specifies that John Snead is entitled to Merrill Lynch account number X7695 and Merrill Lynch account number X7W16, while Plaintiff is entitled to Merrill Lynch account number X2464 and Merrill Lynch account number X9704.[22] Documents submitted by Defendants clearly show that Annuity Policy 571 was an asset held within Merrill Lynch account X7695.[23] That account, as noted above, was expressly granted to John Snead upon divorce.

Plaintiff did not provide any contradictory evidence with regard to which account held the annuity. Instead, Plaintiff argues that Annuity Policy 571 was considered a "retirement account" that was intended to be included in Paragraph 6 of the divorce agreement. However, Defendants presented evidence that the annuity itself is not a retirement account, but rather is an asset that can be held in various types of accounts, not just retirement accounts.[24] The evidence shows that Annuity Policy 571 was purchased as a non-qualified annuity, meaning that it was not purchased to be held in a tax-advantaged retirement account.[25] Further solidifying the conclusion that Annuity Policy 571 was not intended to be included in Paragraph 6 of the divorce agreement is a

---

[21] Doc. 28-2 at ¶ 6.

[22] Doc. 28-2 at ¶¶ 1d, 1e.

[23] Doc. 27 at ¶ 4; Doc. 27-3 at p. 6 (account statement listing Annuity Policy 571 as an insurance contract held under the account); Doc. 31 at ¶ 2; Doc. 22-1 at p 2 (listing the account number on the top right corner of the application for Annuity Policy 571).

[24] Doc. 31 at ¶ 3.

[25] Doc. 31 at ¶ 3; Doc. 22-1 at p. 2 (item 4 of the annuity application indicates it was opened as a non-qualified annuity).

letter that Plaintiff wrote to Merrill Lynch after the divorce requesting the immediate liquidation of the various accounts that she was entitled to receive.[26] The letter did not mention Annuity Policy 571. She asked for Account x8103, Account x1632, Account x1633, and the Air Land Transport Inc. Employees' Profit Sharing Plan. All of these were expressly awarded to her in Paragraph 6 of the divorce agreement. She asked for account number X2464, which was also awarded to her in the divorce agreement. She also asked for two other Transamerica Landmark annuities that were, presumably, held in the Merrill Lynch accounts awarded to her. Neither of these two are the annuity at issue.

Plaintiff asserts in her surreply that whether the divorce agreement awarded her Annuity Policy 571 is a matter for the jury given the disputed positions of the parties. The only evidence in support of her position, however, is her affidavit, in which she summarily avers that Annuity Policy 571 "is a retirement account included in the property conveyed to [her] under the Divorce Settlement."[27] Self-serving affidavits that are conclusory in nature and not supported by factual data or supporting evidence are insufficient to create a genuine issue of material fact.[28] Given that Plaintiff bears the burden of proof at trial, she cannot survive summary judgment without putting forth some sufficiently specific facts from which a jury could reasonably find in her favor on this issue.[29]

Absent an express term awarding Plaintiff Annuity Policy 571 upon divorce, the revocation-by-divorce statute is applicable here unless there is sufficient evidence that John Snead intended to keep Plaintiff as the beneficiary in spite of the divorce. Plaintiff

---

[26]Doc. 27-2 at p. 1.

[27]Doc. 23 at ¶ 5.

[28]*See Burchett v. Bromps*, 466 Fed. Appx. 605, 607 (9th Cir. 2012) (quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).

[29]*Id.*

-8-

contends that the fact that she remained the listed beneficiary for thirteen years after the divorce and was only removed when John Snead was on his deathbed is sufficient to show the requisite intent to keep her as the beneficiary. If that were enough to rebut the presumption of revocation, the purpose of the statute would be gutted: "The underlying idea [of these revocation-on-divorce statutes] was that the typical decedent would no more want his former spouse to benefit from his pension plan or life insurance than to inherit under his will. . . . So a decedent's failure to change his beneficiary probably resulted from 'inattention,' not 'intention.'"[30] There is no evidence of John Snead's intent to keep Plaintiff as the beneficiary. Indeed, all evidence suggests otherwise.

## V. CONCLUSION

Based on the preceding discussion, Defendants' Motion to Dismiss at docket 13 is GRANTED. Plaintiff's claims against Defendants are dismissed. However, the court recently allowed an amendment to the complaint that added plaintiffs—representatives of John Snead's estate and trusts. The analysis above does not apply to these newly added plaintiffs, and the complaint survives to the extent it is now maintained by them. The motion for a hearing at docket 34 is DENIED.

DATED this 3rd day of December 2019.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[30] *Sveen v. Melin*, 138 S.Ct. 1815, 1819 (2018).